Our next case is Uniloc 2017 LLC v. Google LLC, number 22-1245. Mr. Jackson, you have reserved five minutes of your argument time for rebuttal, correct? Yes, sir. Okay, we're ready for you. Can I get my laptop open? Sure. Do I need to refer to the record? May it please the courts. In this case, the board erred in at least two significant ways. First, the board erred by conflating the specific acts recited in Dependent Claim 7 as being equivalent to or the same as the independent acts recited in Claim 6, Independent Claim 6. And secondly, the board erred in construing the claim term key fact, which the part, it's not disputed that that was not a term of art and therefore, it could only be construed by looking at the specification. At the outset, can you just, is it clear that Uniloc 2017 LLC has standing? Is this the case in which there had been some litigation about that? There had been, Your Honor. And this court reversed the district court's ruling on standing. And we held that there was standing or just that it had to go back and be decided? I believe the court determined that there was standing and remanded the case back to the district court. Now, since that time, the district court has administratively closed the case pending certain appeals, including this appeal. So there hasn't been any further action on that. Okay. Sorry for that. That's okay. Thank you, Your Honor. So with respect to the conflating Claims 6 and 7, you know, the doctrine of claim differentiation under that doctrine, there is a presumption that the elements of the dependent claim recite something in addition to what's recited in the independent claim. And in this case, the board in particular, at Google's behest, but the board didn't cite any evidence to overcome that presumption. They simply, in their opinion, laid out the parties' respective positions and then concluded, we agree with Google. But there was no analysis. There was no evidence cited, nothing certainly in the intrinsic record to overcome that presumption that those steps, those acts rather, in Claim 7 were something in addition to what was recited in Claim 6, for which there was a presumption that those things are separate. The structure of the claim also strongly suggests that those are additional acts. Can you remind me why this point matters? Well, because to invalidate the claims, what happened was in the petition, Google pointed to this morphology analysis as satisfying what's been referred to in the Claims 6A1 and 6A2, as well as the elements in Claim 7A. Morphology analysis from some piece of prior art? Right. From the Braden Hardin, Harder. And your position is that might satisfy Claim 7, but not Claim 6? Exactly. Claim 7, Claim 7A expressly recites a morphology analysis. And so what the petition did is they looked to that morphology analysis that eventually is claimed in Claim 7 and said, well, that satisfies Elements 6A1 and 6A2 in the independent claim. And our points are those are distinct acts. Those are additional acts. So and there's the presumption under the law is that they are distinct. And so there had to be some evidentiary basis to overcome that presumption. And the Board didn't identify any evidence to support overcoming that presumption. And so it erred. In addition, Claim 7. I'm not sure I understand exactly what you're saying about the interrelationship between 6 and 7. Certainly they are related as dependent and independent claims. And that means that the independent or the dependent claim has to add something to what was in the dependent claim. But it doesn't have to be the case that you can't prove infringement, for example, or coverage of both claims with the same evidence, right? I mean, if you had an independent claim which claimed a bucket, and the dependent claim said a bucket of Claim 1, which is white, then you could prove both of them, coverage of both, by proving the existence in prior art, for example, of a white bucket. So isn't that what's going on here? I don't think so, Your Honor. And I can, as I get into the argument further, I'll elaborate on that a bit. But here, these acts are distinct based not just on the presumption, but also on the structure of the claims, as well as the specific language of the claims, the specific acts that are recited in the claims. They aren't, conceptually, they don't overlap. Okay, so what I was going to say about Claim 7, Claim 7 recites that, I'll get the patent here just to make sure I'm quoting it exactly. It says that Claim 7 depends from Claim 6. And it says, the key fact based text retrieval method of Claim 6, wherein the step of below that. The key fact extracting step in Claim 6 is what in the briefing was referred to as one of the overarching steps in Claim 6. There's three in Claim 6. Under each of the overarching steps in Claim 6, there are acts that are recited. So there's the step, and then there are acts that are recited. In Claim 6, for example, the key fact extracting step includes the act of analyzing a document. I'm just going to paraphrase this. Analyzing a document in user query, extracting keywords, and extracting key facts. So those are the three acts under the key fact extracting step. Claim 7 says, wherein the step of key fact extracting further comprises the steps of, and then it lists four additional acts. So juxtapose that Claim 7 structure against Claim 8. Claim 8 depends from Claim 7. And Claim 8 says, wherein the step of analyzing morphology comprises the steps of, and then it also lists four paragraphs underneath that. So in Claim 8, it's clearly referring back to Claim 7, one of the acts in Claim 7. The first act, analyzing morphology. So when the applicant intended to elaborate on an act that's in the claim, in the higher level claim, they did that in Claim 8. They referred back to the act of analyzing morphology. In Claim 7, the structure is different. Claim 7 specifically says it's elaborating on the key fact extracting step, the overarching step, not one of the acts that's provided under that step in Claim 6. But the way that the prior art was applied was to say that the analyzing morphology act of Claim 7 is a replacement or satisfies the analyzing act of Claim 6. But it's not. Claim 7 is adding additional acts to the list that are recited in Claim 6 for the key fact extracting step. But if one is to find that Claim 7 covers a particular embodiment, you have necessarily found that all of the elements of Claim 6 are satisfied, correct? Conceptually, if a dependent claim has been shown to be invalid properly, then you necessarily have to show that the independent claim is also invalid. Well, for purposes of infringement, if you're trying to prove infringement of Claim 7, you have to prove all of the elements of Claim 6. That's correct. That's correct. Can you address your second point about the format of the key fact for which I guess I focused to some extent on Column 4, Lines 58 to 60? Yes, Your Honor. And you're correct. That is sort of the focus of the issue, if you will. A key fact, that term, it's not disputed. That is not a term of art. And yet it's in the claims. So in order to understand what that claim term means, you have to look at the intrinsic record. And in this intrinsic record, there are three, I think, primary places where the key fact is described. And here in Column 4, Lines 58 to 60, is one of those locations. The parties agree, and the Board agrees as well, that a key fact is something that describes a semantic relation between words. And it's extracted from either the document that's being analyzed or the query. The issue was whether this particular form that's described here in Column 4 is required to be a part of the definition of a key fact. And the Board and Google in their briefing as well looked at the specification to the other parts of the specification where the key fact is described and were willing to accept those teachings. But when it came to this particular form, for whatever reason, the Board rejected that and didn't accept it. So this term, not being a term of art, you have to look at the entirety of the specification under Phillips and determine what it means. And here, that part was rejected. And we don't believe that that's appropriate. In fact, every instance in the specification of a key fact is always of the form that's described here in Column 4. There's the object, property. Regardless of whether the object has multiple tags or not, there's an object and there's a property associated with the key fact. And so looking at the entirety of the specification and coming up with the construction of what a key fact is, it was error to ignore the form that's specified in the specification as well. Tell me if I'm misremembering. I thought the Board said two things. One, that even if that's true, it endorsed the other side's expert who said, and here I'm going to summarize perhaps unfairly, when I see a triple, I see a double. And second, even if I didn't, the double is obvious in light of the triple. Generally, I think that's a general characterization of what the Board did. With all due respect, though, to the Board, a triple is not a double. And it's not proper to say that the form has to be a double, to use that terminology, object and property. And to say that when we look at a – so in the prior art, the format was word, relation, word. In the key fact scenario, it's object, property. In the briefing, I noticed it got conflated a little bit, I think for argumentation purposes. But the elements of the two structures are entirely different. They're not the same. Word, relation, word in the prior art, object, property here. Well, object, property is really just – isn't not just a shorthand version of saying word and another word, which a priori has a certain relationship to the first word. Not quite, if I could, Your Honor. I'm sorry. But in the prior art, it literally was word, word, from the document or from the query. It was extracted out. It might have been reduced to its base form, but it was the word. In the 908 patent, it's not necessarily – it's a tag that's a construct or a representation of a word. So it's not literally taking out the words. And this is one of the points that was made in the briefing. The 908 patent, in part, distinguishes the prior art as being insufficient because it literally used word-based searching or phrase-based searching as well. But it was based on what literally was in the document or in the query, whereas in the 908 patent, it's more of a – it's a factual extraction, in fact, the claims and the specification talk about. It's a factual extraction from those sources. So it's not, as Your Honor's question, it's not literally sort of a reorganization of those concepts. Okay. You're into your rebuttal. Yes, I apologize, Your Honor. I'll reserve the rest. Thank you. Thank you. Mr. Goldberg. May it please the Court. Uniloc's claim construction arguments are immaterial to the outcome of this appeal. Even assuming Uniloc's claim constructions are correct, which they are not for the reasons stated in our red brief, substantial evidence still supports the Board's findings that the claims are obvious. Starting with Uniloc's claim differentiation arguments, which seek to differentiate Claim 6's analyzing a document collection and a user query from Claim 7's analyzing morphology of an input sentence, we articulated in the bullets on page 56 of our red brief how the Board identified different features of Braden-Harder for Claim 6 than for Claim 7. The first two bullets on that page show the identification that the Board made of what in Braden-Harder corresponds to the analyzing in Claim 6, and the third bullet shows what the Board identified in Braden-Harder as the analyzing in Claim 7. Uniloc did not dispute in its gray brief that these features of Braden-Harder meet the limitations of Claim 6 and of Claim 7. Instead, it argued that the portion of the final written decision that Google had referred to was dealing with some broader concept and not dealing with the analysis step in Claim 6. But what happens if we disagree that Claim 7 has distinct acts from those in Claim 6? Does that dispose of the case? Yes, if you disagree that there have to be distinct acts, then that disposes of the case, because Uniloc's only arguments against – well, it disposes of the case as to this claim differentiation argument because Uniloc's only arguments are premised on its claim differentiation, claim construction. So if we turn to appendix pages 37 and 38, that is the paragraph that is referred to in Google's red brief at page 56 in the bullets. And that paragraph specifically responds to the claim differentiation argument as Uniloc made it below in its patent owner response. We can see at the bottom of page 37, at the start of that paragraph, the board is referring to patent owners' arguments about the key fact extracting step, and it points to the patent owner response at pages 23 and 24. Those are appendix pages 348 and 349. If we turn to those pages of Uniloc's patent owner response, we can see that these are the arguments arising from petitioner's failure to recognize Claim 6 affirmative recites certain acts. So this is their claim differentiation argument below. We can see that when we get to the end of that argument on appendix page 349, they conclude by specifically calling out the analyzing a document collection and user query part of Claim 6. They say, and this is starting at the fourth line on that page, the petition fails to identify any document collection, i.e. multiple documents, and a user query in the context of a key fact extracting step. So this is the argument that the board is responding to at appendix pages 37 and 38. We know that because if you look at the second sentence of the last paragraph on appendix page 37, the board again refers to the analyzing of a document collection and user query. If we go to the next page, the board explains how Braden Harder teaches this analysis citing to Google's petition and substantial evidence in the form of Dr. Jensen's declaration and Braden Harder itself. As just one example, starting about eight lines down, the board says that Braden Harder describes that each document is subjected to natural language processing and user supplied query is analyzed in the same manner. So user supplied query is analyzed. This is the same manner as what just happened in the documents, being subjected to natural language processing. The board also noted at the bottom of appendix page 37, starting at the second to last line, patent owner fails to identify what is missing from petitioner's showing. That is still the situation today. Unilock has not identified what is missing in Braden Harder for Claim 6 or Claim 7. So substantial evidence supports the board's finding that Braden Harder renders those claims obvious, even if Unilock's claim construction differentiation argument is right and, again, as we noted in our red brief, it is not. Turning to the key fact itself, again, even if the court was to accept Unilock's arguments as to the specific format required for the key fact, again, that would not impact the outcome of this case because, as Judge Taranto had noted earlier, the board already found that one, Braden Harder discloses it, a triple being another form of a double, and then also crediting Google's expert that it would have been obvious to remove that relation in the organization. Can I just ask you about the first part of that? I guess I'm struggling to understand why it could be the case that the expert said, even if the key fact is a fact expressed in a particular format with only two elements, an ordered pair, not an ordered triple, something like 3 equals 2. Obviously, that's ridiculous. Help me understand why what the expert said is something different from that. There's a little bit more nuance here. The claim construction, the specific construction that Unilock articulates for what is a key fact, that has been somewhat of a moving target before the PTAB and even here on does it just need the format, does it need the format, but then you have to add this requirement that it can't have anything extra. When the expert is saying, well, 3 can be 2, of course, if we were to expressly say, well, it can't have anything extra, it has to just be those two, it can't have anything extra, then that would be an issue. But now you're, I think, not accepting the claim construction premise. The premise of, I think, what I'm trying to ask is that the patent as a whole, most particularly in my mind, column 4, lines 58 to 60, specify a quite particular format, which is an ordered pair, not an ordered three-double. And then I realize there's a kind of, the prior art teaches that. The expert said, in any event, if it doesn't, it's obvious. I'm putting aside that last thing and I'm trying to explore just to understand how that first thing could be a reasonable thing to say. I think it's because when, in that portion of the patent that you're referring to, it expresses that format. There's a little ambiguity in that statement as to whether it's the format of the representation that it's talking about or if it's the format of the key fact. But also, if you have- Wait a second, I thought the opening paragraph that says key fact is a fact and the next sentence says something about its representation. That's already a difficulty because a fact is not a representation. I take those two things to be put together to mean a fact as represented, and then later it adds, in fact, represented in the following way. And I don't remember seeing this is only an embodiment language in the column 4. So I guess I want to just take as a given that a key fact is a fact represented in a particular way, a precise ordered pair, and nothing else. If we say and nothing else, then yes, a triple would not be a double in that circumstance. The patent itself does not say and nothing else. That's what the difference is. But as you recognize, even if that fails, the board also found that it would still be obvious to modify the triple in Braden Harder to remove that relation, and then you are at this literal exact format. This is at- Remind me what the stated motivation to make that modification is. The motivation is to- If we look at appendix page 39, this is the board's final written decision, and it actually goes through this issue. Braden Harder describes that its invention can readily utilize any other form. So we don't have an issue of changing from the triple to what we've been referring to today as a double. The board goes on to recognize that Braden Harder further describes that the criteria for determining a match can be relaxed to encompass paraphrases as matching, and Dr. Janssen testified that Braden Harder's descriptions would have led a person of ordinary skill in the art to be motivated to generate logic of forms that did not include the relations for noun of positive or relative clause constructions to increase matches with sufficiently similar semantic content, thereby ensuring that all relevant documents are retrieved from the document collection. So it's essentially you're saying we're not going to require that you look at that middle part because we want to get more matches. So we're going to not be as restrictive and require that you look at that middle part so the middle part can be taken out. That's what the expert testified to at paragraph 221 of his declaration. That's what the board relied upon. The board gave substantial weight to the expert's testimony and agreed with Google that it would have been obvious to generate other logic forms that do not include the relations to enable structural paraphrasing. That structural paraphrasing is the taking out the middle so that you can get more matches. And ULOC, they had no response to this timely at the board. Here their response is to try to add, create burdens that they say Google should have met below, things like saying that Google needed to preemptively articulate why this modification would not have rendered Braden-Harder inoperable for its intended purpose. It's not clear where that argument goes. They have no testimony about it. They have no evidence on it. Braden-Harder itself, as I mentioned before, recognizes that its invention can readily utilize any other form, and it specifically recognizes the possibility of removing this relation. So that doesn't seem to go anywhere. In any case, as I mentioned, all of the arguments that UNILOC has made, saying that this is not substantial evidence, they're all waived. They were not made below at the time of the patent owner response. UNILOC's only response to that is to say, well, Google changed its arguments in its reply, so that somehow gives them an excuse to be making new arguments in their surreply. That is not the case. If you look at appendix page 39, toward the top there's an id in the fourth line. That's the petition. If you look back at appendix page 38 at the bottom, specifically petition page 47. The board goes on to cite every portion of Braden-Harder, every portion of the expert declaration in that paragraph that we've been discussing was cited in the petition at page 47. That is appendix page 124. We can see on appendix page 124, exhibit 1020, that's Braden-Harder. Column 11, line 51 to 55. Column 25, line 49 to 60. The expert declaration, exhibit 1003, paragraphs 221 to 222. There's nothing new in Google's reply. These are all arguments that are stemming from the petition that the board agreed with, that the board found, showed that the claims are obvious. This is substantial evidence showing that the claims are obvious, even under the very narrow construction by UNILOC. The court should affirm the board's findings because they are all supported by substantial evidence. Unless there's any questions, I'll stop there. Thank you very much. Mr. Jackson, I've restored you to three minutes for rebuttal time. Thank you, Your Honor. I appreciate that very much. I'll try to be as brief as I can, and so I'm going to ask Your Honors to look at the underlying record. But to address Google's first point, and this is the bullets that are on pages 56 and 57 of the red brief, that is not an accurate characterization of the evidence that was relied upon to show those elements. On page 56, if you look at the first two bullets, they're pointing to pages APPX 112 through 114, when the actual element is addressed on pages 114 to 115. And if you look at 114 to 115, it relies on this morphological analysis, which is the same thing that they concede they relied on for claim 7 in the third bullet. Similarly, if you look at page 57 in the first bullet, they point to pages 117 and 118 of the appendix, but the correct side is to 116, which is in the same section. But on page 116, when they talk about the element, they again point to the morphological analysis, which again they rely on in the second bullet point on page 57 of their brief. Obvious to modify, they mentioned that their expert opined on that, and concededly the Patent Office almost verbatim relied on the briefing that Google put together for the idea that the key fact in Braden-Harder could be modified. The problem is that the expert misread or mischaracterized Braden-Harder quite clearly. If you actually read Braden-Harder itself, Braden-Harder in the section they rely upon, this is in column 25, lines roughly lines 53 to 57, it says here apparently this is the idea that you could, actually it begins earlier at line 49, but Braden-Harder says, we can also, we heretofore have been talking about an exact match. We required an exact match, but you could relax the standard to try to catch paraphrases. Then they give examples of the type of paraphrases that could be caught. They could be lexical or structural. You can either have synonyms and try to catch them using the Braden-Harder method, or you can reorder the phrases. They give some examples down below with respect to the phrase, the President comma Bill Clinton and how you can reorder that and try to capture that using their system. It never says that you drop out the relation from the triple. It doesn't say we're going to capture these paraphrases by dropping out relation from the word relation word triple. It never says that at all. It's simply saying we can relax the matching standard in some fashion. Frankly, it's not disclosed how they're going to do that, but they're leaving open that possibility. There's never a discussion of removing the relation, and with respect to removing the relation, that's a semantic relation, which is expressly required in the 908 patent, again, at column 4. I forgot the line numbers. Where it talks about the form, this is at lines 58 to 60, it says all key facts express semantic relation between the words in the form of object property. The board took the unusual position that we can remove the semantic relation from Braden Harder's triple and yet somehow satisfy the requirement in the 908 patent that the key fact has to express a semantic relation. That makes no sense. In addition, in Braden Harder, that relation, that semantic relation, is used to determine weights to be given to various search terms or triples when they're searching the documents. You can't get to the weights of Braden Harder unless you have the relation. So the clear teaching is relation is never removed in Braden Harder. It's an essential part of the teaching of that patent. You've run out of time, sir.  You're on mic.